U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2012 JUN 13 PM 2:24

CLERK
BY \_\_\_\_PM\_\_\_\_
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

JPMORGAN CHASE BANK, )
NATIONAL ASSOCIATION, )
 )
    Appellant, )
 )
v. ) Case No. 5:12-cv-9
 )
JOHN THOMAS GALASKE, SR., )
Debtor, and JAN M. SENSENICH, )
Chapter 13 Trustee, )
 )
    Appellees. )

## OPINION AND ORDER REVERSING AND REMANDING BANKRUPTCY COURT'S CHAPTER 13 CONFIRMATION ORDER
(Docs. 1, 4, 5)

This matter came before the court on the appeal of Appellant JPMorgan Chase Bank, National Association ("Chase"), of the Bankruptcy Court's Order confirming the reorganization plan (Doc. 1-3) (the "Plan") of Debtor John Thomas Galaske, Sr. (Doc. 4). At issue is the Bankruptcy Court's confirmation of a Plan that purports to modify the terms of a mortgage Mr. Galaske executed and delivered to Chase (the "Chase Mortgage"). Chase claims that the Bankruptcy Court impermissibly modified Chase's secured claim over a period of more than five years in violation of 11 U.S.C. § 1322.

Chase is represented by Norman C. Williams, Esq. Mr. Galaske is represented by Rebecca A. Rice, Esq. The Chapter 13 Trustee is Jan M. Sensenich, Esq. The parties waived oral argument.

I. **Factual and Procedural Background.**

Mr. Galaske is a partner in "Bad Boys Auto," an automotive repair shop that occupies the same real property as his principal residence in Whitingham, Vermont. On September 19, 2007, Mr. Galaske executed and delivered to Chase a note in the original

principal amount of $100,000, with an interest rate of 9.175%,[1] and a monthly payment of $817.25 over a thirty year term (the "Chase Note"). The Chase Note is secured by the Chase Mortgage.[2]

On October 6, 2011, Mr. Galaske filed a voluntary Chapter 13 petition after failing to make payments when due under the Chase Note. In his petition, Mr. Galaske states that he owes $98,268 to Chase based on its claim secured by a "[h]ouse and [s]hop on 1.7 acres" located at 279 Poverty Row in Whitingham, Vermont. (Doc. 4-1 at 8.) He identifies the current value of his interest in the property, without deducting the secured claim to Chase, as $217,000.

On the same date as his Chapter 13 petition, Mr. Galaske filed his proposed Plan. The Plan identifies the Chase Mortgage as the sole secured claim and states: "THE CLAIM OF CHASE MORTGAGE IS BEING MODIFIED AS IT IS SECURED BY BOTH A RESIDENCE AND AN AUTOMOTIVE SHOP. THE MONTHLY PAYMENT IS BASED ON A 30 YEAR AMORTIZATION AT 4.25% INTEREST ON $100,000.00. PAYMENTS SHALL BE MADE OUTSIDE THE PLAN ONCE THE PLAN IS COMPLETED." (Doc. 4-1 at 51.)

On November 9, 2011, Chase filed its objection to the Plan, presenting five grounds for rejecting it: (1) the Plan "impermissibly seeks to modify the Creditor's secured claim, in violation of 11 USC § 1322(b)(2). The mortgage on the property is a residential mortgage. The fact that there is an automotive shop on the property is irrelevant"; (2) "The Chapter 13 Plan understates the total balance of the Creditor's claim, and no evidence of the valuation of the subject real property has been provided"; (3) "the Chapter 13 Plan term exceeds five years, in violation of 11 USC § 1322(d)"; (4) "The Plan is ambiguous as to how and when payment will be made to the Creditor once the Plan is completed"; and (5) "The Plan does not account for pre-petition arrearages

---

[1] Chase identifies the interest rate as 9.178% although this amount does not appear on the face of the Chase Note. *See* Doc. 4-1 at 67.

[2] The Chase Mortgage is not part of the record before this court and, according to Chase, was not a part of the record before the Bankruptcy Court.

2

due [Chase] in the approximate amount of $30,000.00" (Doc. 4-1 at 55-56.)

On November 15, 2011, the Bankruptcy Court held a hearing to address confirmation of Mr. Galaske's proposed Plan as well as to address a motion pertaining to mortgage mediation. The following day, the Bankruptcy Court issued an Order Overruling Objection to Plan under § 1322(b)(2) (the "11/16/11 Order"). In the 11/16/11 Order, the court addressed only Chase's claim that its secured claim could not be modified pursuant to 11 U.S.C. § 1322(b)(2) which provides that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence[.]" Noting that Mr. Galaske executed and delivered the Chase Mortgage in 2007 at a time when he was using the property as both a principal residence and as an automotive shop, the Bankruptcy Court held that "[i]f the real property is not being used solely as the debtor's principal residence at the time of the mortgage transaction, the anti-modification provision of § 1332(b)(2) is inapplicable." (Doc. 4-1 at 59.)[3]

---

[3] In support of this conclusion, the Bankruptcy Court cited *In re Moore*, 441 B.R. 732, 739-41 (Bankr. N.D.N.Y. 2010) and *Scarborough v. Chase Manhattan Mortg. Corp. (In re Scarborough)*, 461 F.3d 406 (3d Cir. 2006) which stand for the proposition that the relevant time period to determine whether the real property is the debtor's principal residence is when it is used for collateral at the time of the mortgage transaction. Noting that "[t]here is a strong split of authority on this issue," the Bankruptcy Court for the Southern District of Illinois, explained that "[t]he two competing theories are at the time of the transaction and as of the time of the petition" and concluded that, as found by the Bankruptcy Appellate Panel for the Ninth Circuit, the time of the petition should govern. *In re Austin*, 2012 WL 1372212 (Bankr. S.D. Ill. April 19, 2012), at *1 (citing *Benafel v. One West Bank, FSB (In re Benafel)*, 461 B.R. 581, 589 (B.A.P. 9th Cir. 2011)) ("Regardless of recent 'trends' in case law and commentary, however, we find that the majority of cases interpreting § 1322(b)(2) favor use of the petition date to determine principal residence" and noting that "[i]n numbers, the courts that rely upon the loan transaction date for determining a chapter 13 debtor's principal residence amount to a distinct minority."). The courts are also divided as to whether any use of real property for more than a principal residence is sufficient to render the anti-modification provision of 1332(b)(2) in- applicable. *See In re Zaldivar*, 441 B.R. 389, 390 (Bankr. S.D. Fla. 2011) (collecting cases, adopting a totality of the circumstances approach as opposed to a bright line rule, and noting that mere renting out of a room in a residence should not constitute grounds for loan modification). The court need not revisit these issues because Chase has not appealed this aspect of the Bankruptcy Court's 11/16/11 Order.

3

On November 17, 2011, the Bankruptcy Court issued its Findings and Order Confirming Chapter 13 Plan (the "Confirmation Order"). The Confirmation Order approved the Plan as filed and stated that any objections to the Plan not specifically addressed in the Order were overruled. The Bankruptcy Court further found that "[t]he Plan complies with the provisions of Chapter 13 of the Bankruptcy Code and all other applicable provisions of the Bankruptcy Code." (Doc. 4-1 at 60.)

On November 29, 2011, Chase filed a Notice of Appeal.

## II. Conclusions of Law and Analysis.

On appeal, Chase's challenge to the Plan is twofold: (1) whether the Plan violates 11 U.S.C. § 1322 by permitting repayment of Chase's modified secured claim over a period longer than five years; and (2) whether the Plan violates 11 U.S.C. § 1325 because the present value of the payments to be made under the Plan on account of Chase's modified secured claim is less than the amount of such claim.[4]

In opposing Chase's appeal, Mr. Galaske and the Chapter 13 Trustee first argue that Chase has waived its challenges on appeal by failing to adequately present them to the Bankruptcy Court. Second, they argue that provided the Plan itself lasts only five years, § 1322(d) is not violated because "many Chapter 13 Plans have been confirmed which provide for the amortization of secured loans beyond the actual term of the Plan." (Doc. 5 at 2.) Although they concede that such plans generally involve creditor consent, they argue that here "consent must be assumed." *Id.*

In reply, Chase contends that its written objections to the Plan were sufficient to put both Appellees and the Bankruptcy Court on notice of its challenges and that, in any

---

[4] In its Statement of Issues on Appeal, Chase further challenges whether the Plan violates Standing Order #10-2 of the Bankruptcy Court because it makes no provision for Conduit Mortgage Payments or other pre-petition mortgage arrearages owed to Chase. This issue was neither presented to the Bankruptcy Court, nor briefed on appeal. Accordingly, the court does not consider it. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 527 (2d Cir. 1990) (arguments that were not raised below do not require review unless the failure to consider them would result in manifest injustice); *see also Ahmed v. Holder*, 624 F.3d 150, 153 (2d Cir. 2010) ("Issues not briefed on appeal are considered abandoned.").

event, the Bankruptcy's conclusion that the Plan meets all the requirements of Chapter 13 places the accuracy of that legal conclusion squarely before the court.

### A. Standard of Review.

This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). Federal Rule of Bankruptcy Procedure 8013 establishes the standard governing a district court's review of a bankruptcy court's order, and states that a district court functions as an appellate court and may affirm, modify, reverse, or remand an order with instructions for further proceedings.

Findings of fact "shall not be set aside unless clearly erroneous." FED. R. BANKR. P. 8013. A finding is "clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *In re 139-141 Owners Corp.*, 313 B.R. 364, 367 (S.D.N.Y. 2004) (quoting *United States v. Mitchell*, 966 F.2d 92, 98 (2d Cir. 1992)).

A bankruptcy court's conclusions of law are reviewed *de novo*. *In re 139-141 Owners Corp.*, 313 B.R. at 367 (citing *In re Maxwell Newspapers, Inc.*, 981 F.2d 85, 89 (2d Cir. 1992)).

### B. Whether Chase Waived Its Challenges to the Plan.

As a general rule, a court may refuse to consider an argument in a bankruptcy appeal not raise in the court below. *In re Lionel Corp.*, 29 F.3d 88, 91 (2d Cir. 1994); *see also In re Ozark Restaurant Equip. Co. Inc.*, 850 F.2d 342, 346 (8th Cir. 1988) ("As a reviewing court the district court is not empowered to consider an issue not raised in the bankruptcy court."); *First Brandon Nat'l Bank v. Kerwin-White*, 109 B.R. 626, 629 (D. Vt. 1990) ("This court, however, need not address the issue because [appellant] neglected to raise it before the bankruptcy court; hence, it is considered waived."). The appellate court nonetheless retains "the authority to decide issues that were argued before but not reached by the [lower] court." *The Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 90 (2d Cir. 2004).

In a written objection filed with the Bankruptcy Court, Chase objected to the confirmation of the Plan, stating, among other things, that "[t]he Chapter 13 Plan term

5

exceeds five years, in violation of 11 USC § 1322(d)." (Doc. 4-1 at 55.) This objection was clearly sufficient to preserve the argument Chase now makes on appeal that the Plan violates the five year limit set forth in § 1322(d). The Bankruptcy Court's decision to overrule this objection without further analysis does not alter that conclusion. *See Pellegrino*, 380 F.3d at 90; *see also United States v. Williams*, 504 U.S. 36, 41 (1992) (an issue is subject to review on appeal if "pressed or passed on below.").

Albeit less clearly, Chase also objected before the Bankruptcy Court to the terms of the modification of its secured claim, pointing to the Plan's ambiguity as to "how and when payments will be made once the Plan is completed" as well as to how pre-petition arrearages in the amount of $30,000 would be paid. This, too, was sufficient to preserve those arguments for appeal. *See Higgins v. New York Stock Exch., Inc.*, 942 F.2d 829, 832 (2d Cir. 1991) (finding argument not waived on appeal where the argument before the district court "although different in emphasis from the point pressed on appeal, at least introduced the [same] notion" relied upon on appeal).

Having found Chase has preserved the arguments it now makes on appeal, the court determines de novo whether the Bankruptcy Court committed error as a matter of law in confirming Mr. Galaske's Plan.

### C. Whether the Modification of Chase's Secured Claim Exceeds the Plan's Five Year Limit.

Section 1332(a) of the Bankruptcy Code sets forth mandatory as well as permissible elements of a Chapter 13 plan. One permissive element is "modification" pursuant to § 1322(b)(2) which authorizes the plan to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is debtor's principal residence[,]" "including the amount of the payment on the claim, the timing of payments, and the finance charges." *In re Nosek*, 544 F.3d 34, 45 (1st Cir. 2008) (citing 8 A. Resnick & H. Sommer, COLLIER ON BANKRUPTCY ¶ 1322.06 (15th ed. rev. 2008)). "However, once a debtor proposes to modify a secured creditor's claim, the Code does not allow a debtor to modify it without limitation." *In re Bell*, 2011 WL 2712755, at *3 (D. Mass. July 12, 2011).

6

> Upon modifying a claim, courts have consistently held that a debtor must choose one of two options: i) the debtor may modify the terms of the note and mortgage, in which case all payments for the secured portion of the claim must be completed during the term of the Plan and cannot exceed the life of the Plan; or ii) the debtor may cure the mortgage default and maintain the same payments of principal and interest under the current note during the life of the plan and beyond, as necessary for the total principal payment to equal the amount of the secured claim.

*In re Bell*, 2011 WL 2712755, at *3 (citing *In re Martin*, 444 B.R. 538, 545 (Bankr. M.D.N.C. 2011) ("A debtor may choose one of two options--to 'cure and maintain' according to the original terms of the note, or to modify the terms of the note and complete payments of the secured portion of the claim within the life of the plan--but they may not choose both."); *Enewally v. Wash. Mut. Bank (In re Enewally)*, 368 F.3d 1165, 1172 (9th Cir. 2004) (holding that "a [C]hapter 13 debtor may not invoke both a modification of a secured creditor's claim under § 1322(b)(2) and the right to 'cure and maintain' beyond the plan term as authorized under § 1322(b)(5)" by dividing the claim into secured and unsecured portions and then satisfying the secured portion of the claim beyond the life of the Chapter 13 plan); *see also In re Plourde*, 402 B.R. 488, 491 (Bankr. D.N.H. 2009); *In re McGregor*, 172 B.R. 718, 721 (Bankr. D. Mass. 1994); *In re Legowski*, 167 B.R. 711, 715-16 (Bankr. D. Mass. 1994); *In re Gilbert*, 2012 WL 669858, at *5 (S.D. Fla. Feb. 27, 2012).[5]

Where, as here, the debtor opts to modify the terms of a secured claim, § 1322(d) requires that the full amount of the secured claim be paid over the life of the Plan which, under § 1332(d) is three years unless it is extended with good cause to five years. *See In re Valdes*, 2010 WL 3956814, at *4 (S.D. Fla. Oct. 4, 2010) (Section 1322(b)(2) along with § 1322(d) "does not allow a modified secured debt to be paid over a period of time longer than the plan terms"); *In re Bell*, 2011 WL 2712755, at *6 (Chapter 13 plan which authorizes modification of a secured obligation must "require that payment on the

---

[5] A few courts have held the two options are not mutually exclusive and "have ruled that a debtor may use sections 1322(b)(2) and 1322(b)(5), together, to treat the same claim in a chapter 13 plan." *In re Elibo*, 447 B.R. 359, 363 (Bankr. S.D. Fla. 2011) (citing *Fed. Nat'l Mortg. Ass'n v. Ferreira (In re Ferreira)*, 223 B.R. 258, 261 (D. R.I. 1998)).

7

allowed secured claim be made and completed over the life of the plan." ) (quoting *In re Legowski*, 167 B.R. at 716).

If a "cure and maintain" approach is chosen, pursuant to § 1322(b)(5), the plan must provide for the "maintenance of payments while the case is pending." Although the Bankruptcy Code does not define "maintenance of payments," courts interpret this provision to require "the same principal and interest payments as provided in the note, within the time frame specified in the note." *In re Veliz*, 2009 WL 3418638, at *1 (D. R.I. Oct. 16, 2009) (citing *In re McGregor*, 172 B.R. at 721). In other words, the payments must be made in accordance with the provisions of the original mortgage note that existed prior to the bankruptcy proceedings. *In re Plourde*, 402 B.R. at 491-92. This requirement holds true even where there is bifurcation of the claim. *See In re Murphy*, 175 B.R. 134, 137 (Bankr. D. Mass. 1994) (ruling that "even after claim splitting, the debtor is stuck having either to pay a large real estate secured claim in full during the plan or to maintain payments consistent with the original loan agreement[.]") (citing 1 K. Lunin, CHAPTER 13 BANKRUPTCY, § 4.47 at 4-65 and § 4.49 at 4-68 (1994)).

Here, the Confirmation Order does not bifurcate Chase's claim but purports to modify the monthly payment and interest rate of the Chase Note and Mortgage during the life of the Plan, coupled with a reamortization of the debt at the modified interest rate for an additional thirty year period thereafter. *See* Doc. 4-1 at 63 (ordering that Chase is to be paid "$491.94 per month for 60 mo." with "balance of claim amortized over 30 years at 4.25% and paid monthly, as specified in the Plan and to be paid directly by the debtor to the mortgage holder after the completion of the Plan."). Neither the Bankruptcy Court nor Appellees cite any authority for this approach, and the court has found none. Indeed, even those courts which have concluded that sections 1322(b)(2) and 1322(b)(5) are not mutually exclusive have held that "in order to use subsection (b)(2) in conjunction with subsection (b)(5), the debtor must modify the rights of the creditor *without* changing the repayment terms of the loan." *In re Elibo*, 447 B.R. at 363. "A change in the amount of the monthly payments hardly constitutes 'maintenance of payments.'" *Id.* (quoting *In re McGregor*, 172 B.R. at 721).

As a leading commentator observes, the approach taken by the Bankruptcy Court in this case has been universally rejected:

> One limitation on combining the power to modify in § 1332(b)(2) with the power to cure and maintain payments in § 1322(b)(5) that is clearly found in the statute is that the plan cannot modify the mortgage in a way that conflicts with the 'maintaining payments' requirement in § 1322(b)(5). The meaning of 'maintaining payments' in § 1322(b)(5) becomes critically important. From the reported decisions, maintenance of payments in § 1322(b)(5) means that the debtor must pay the interest rate and the monthly payment in the mortgage contract during the plan and after the completion of payments to other creditors under the plan.
>
> Chapter 13 debtors sometimes become confused about the meaning of maintaining payments when a home mortgage is not protected from modification and the debtor is unable to pay the allowed secured portion in full during the three-to[-]five year plan. Debtors have tried to split the mortgage under 506(a) and then to modify the allowed secured portion for payment beyond the life of the plan on terms that are different from the interest rate and monthly payment in the original contract. ***The courts have uniformly prohibited debtors from "re-amortizing" the allowed secured claim of an unprotected mortgage holder for payment beyond the life of the plan. Put another way, claim splitting under § 506(a) is not inconsistent with curing default and maintaining payments under § 1322(b)(5), changing interest rate or monthly payment is.***

Lundin & Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 128.2, at ¶12-14 (emphasis supplied); *see also Elibo*, 447 B.R. at 364-65 ("If the Debtor wishes to pay the Creditor's allowed secured claim . . . over a period longer than the five year plan term, the Debtor must cure any defaults "within a reasonable time" and maintain the pre-petition monthly payments at the original interest rate until the Creditor's allowed secured claim is paid in full. If the Debtor wishes to modify any of the terms of the original debt, other than via bifurcation of the claim under section 506(a), the Debtor must make all payments on the secured claim within the time restrictions of section 1322(d)."); *see also In re Russell*, 458 B.R. 731, 738-39 (E.D.Va. 2010) ("While . . . modifications are permitted under § 1332(b)(2), the terms of the modified loan cannot extend beyond the five-year maximum set by § 1322(d)(1)(C) and (d)(2)(C), Bankruptcy

9

Code, since it is only by proceeding under the cure-and-maintain provisions of Section 1322(b)(5) that the debtor can take advantage of a payment term extending beyond the term of the plan.").

Under 11 U.S.C. §1325(a)(1), the Bankruptcy Court is charged with determining whether "the plan complies with the provisions of [Chapter 13]" and with the other applicable provisions of the Bankruptcy Code. In approving a Chapter 13 plan, the Bankruptcy Court must not "mix 'curing' apples with 'maintenance of payments' oranges." *Sapos v. Provident Institution of Sav.*, 967 F.2d 918, 926 (3rd Cir. 1992), *overruled on other grounds by Nobelman v. American Sav. Bank*, 508 U.S. 324 (1993).

Here, the Bankruptcy Court's modification of the monthly payment and the interest rate for Chase's secured claim, coupled with the extension of a modified payment amount and interest rate beyond the five year life of the Plan, was an impermissible mixing of the distinct requirements of § 1322(d) and § 1322(b)(5). This approach was not only unauthorized, it has the potential to be unjust as it provides Mr. Galaske with all the benefits of modification, without affording Chase the five year limitation and other protections of the Bankruptcy Code associated with modification. *See In re Russell*, 458 B.R. at 739 ("Indeed, to permit a plan to pay a modified debt over a period longer than the plan term would create an anomaly with respect to the debtor's discharge at the completion of plan payments," would leave the debtor with a nonrecourse debt, and would produce a result "contrary to what would appear to be Congress's intent that payment obligations not paid during the plan but extending beyond the end of the plan not be discharged."); *see also In re Pierrotti*, 645 F.3d 277, 280 (5th Cir. 2011) (noting that mixing modification with "cure and maintain" provisions results in a "unilateral 'modification' [that] effectively creates a new debt whose payment is due long after the end of his five-year Chapter 13 plan, thus allowing Pierrotti to pay off that debt on his own newly created terms under § 1322(b)(5)").

Because the Bankruptcy Court erred as a matter of law in confirming Mr. Galaske's Plan by providing for modified payments on Chase's secured claim beyond the five year period set forth in 11 U.S.C. § 1322(d), the Confirmation Order must be

reversed. Having determined that the Plan should not have been confirmed in the first instance, the court need not reach Chase's second argument that the Plan violates 11 U.S.C. § 1325 because the present value of the payments to be made under the Plan on account of Chase's modified secured claim is less than the amount of such claim. Remand is sufficient to either address that challenge or render it moot.

## CONCLUSION

For the foregoing reasons, the November 17, 2011 Order of the Bankruptcy Court confirming Mr. Galaske's Chapter 13 Plan is REVERSED and REMANDED for proceedings consistent with this Opinion and Order.

SO ORDERED.

Dated at Rutland, in the District of Vermont this 13th day of June, 2012.

Christina Reiss, Chief Judge
United States District Court